**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**
**Grand Jury Sworn in on April 30, 2026**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 26-cr-142 (ACR)** |
| **v.** | |
| **MALIKTRA DERENORCOURT and** | **VIOLATIONS:** |
| [redacted] | |
| | **18 U.S.C. § 371** **(Conspiracy to Commit Wire Fraud)** |
| **Defendants.** | **18 U.S.C. § 1343** **(Wire Fraud)** |
| | **18 U.S.C. § 1028A(a)(1)** **(Aggravated Identify Theft)** |
| | **FORFEITURE: 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 21 U.S.C. § 853(p)** |

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

## BACKGROUND

At times relevant to this indictment:

1. Defendant [redacted] resided in the District of Columbia.

2. Defendant MALIKTRA DERENORCOURT resided in the District of Columbia.

3. A Credit Privacy Number or ("CPN") was a nine-digit number that is formatted like a Social Security Number but is not issued by the United States Government.

4. F1rst Residences was an apartment building located at 1263 First Street, Southeast, Washington, DC, 20003, owned by 1263 First Street, LLC.

5. Jefferson Marketplace was an apartment building located at 1550 7th Street, Northwest, Washington, DC, 20001, owned by JMP Apartments LLC.

6. Pinnacle NoMa Apartments was an apartment building located at 7 New York Ave, Northeast, Washington, DC 20002, owned by 9 New York Ave LLC.

7. The Maren was an apartment building located at 71 Potomac Avenue, Southeast, Washington, DC, 20003 owned by Riverfront Holdings II, LLC.

8. Yardi Systems Inc. was the owner of RentCafe and had internet servers located in Dallas, Texas that received rental applications from the RentCafe portal.

9. Blue Moon e-signature Services provided e-signature verification services for lease contracts.

10. Maren and F1rst Residences used RentCafe and Blue Moon e-signature Services to facilitate the execution of rental applications and lease contracts.

11. RealPage, Inc. had servers outside of the District of Columbia and provided e-signature verification services for lease contracts.

12. Jefferson Marketplace and Pinnacle NoMa used RealPage, Inc. to facilitate the execution of rental applications and lease contracts.

**<u>COUNT ONE</u>**
**(Conspiracy)**

13. Paragraphs 1 through 12 are incorporated here.

14. Beginning no later than November 2023 and continuing through in or about June 2026 within the District of Columbia and elsewhere, [redacted] MALIKTRA

DERENORCOURT, and others whose identities are known and unknown to the grand jury did knowingly conspire, combine, confederate, and agree with each other to commit offenses against the United States, that is: Wire Fraud, by devising, intending to devise, and engaging in a scheme to defraud and to obtain money and property from various apartment complexes, and companies by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be transmitted by means of wire communications in interstate commerce signals in violation of Title 18, United States Code, Section 1343.

**The Object of the Conspiracy**

15. The object of the conspiracy was for [redacted] DERENORCOURT and others to unjustly enrich themselves by using fabricated and stolen identities to fraudulently obtain leases at various apartment complexes and to obtain methods of payment, without paying rent or bills.

**Manner and Means of the Scheme and Artifice to Defraud**

16. The manner and means by which members of the conspiracy carried out the scheme included, but was not limited to, the following:

a. From at least November 2023 to present, [redacted] MALIKTRA DERENORCOURT and others have been engaged in a scheme to fraudulently obtain residential leases and methods of payment in the District of Columbia and elsewhere using Credit Privacy Numbers ("CPNs") and stolen Social Security Numbers, and fabricated documents.

b. Upon obtaining the leases, they then would either use the unit themselves or sell access to a third party, all while never paying rent. In Washington, D.C., the

eviction process usually takes at least multiple months. [redacted] DERENORCOURT, and others used this delay in order to facilitate the scheme. Once evicted, they continued the scheme by obtaining additional leases using new fabricated or stolen identities.

c. To carry out the scheme, [redacted] and DERENORCOURT used encrypted messaging applications such as Telegram in order to obscure their activities.

d. [redacted] DERENORCOURT, and others often submitted a fraudulent document purporting to represent the applicant's employment history.

e. [redacted] DERENORCOURT, and others then signed lease contracts based on the fraudulently submitted applications.

f. The members of the conspiracy often sold the leases to third parties at a fraction of the cost of the value of the lease and never paid rent.

g. During the scheme, [redacted] DERENORCOURT, and others used BitCoin and Cash App accounts with stolen and fabricated identities to transfer money between themselves.

**Overt Acts**

17. In furtherance of the conspiracy and to effect its objects and purposes, [redacted] DERENORCOURT, and others committed the following overt acts, among others, in the District of Columbia and elsewhere:

(1) On or about November 27, 2023, [redacted] sent DERENORCOURT a message stating "So is she gonna pay the 1k or not?" in reference to an apartment.

(2) On or about November 27, 2023, DERENORCOURT responded inquiring about the details of the apartment in question saying "2 bedroom? And goes it have a balcony" and later "So only 3500 that includes the first rent?"

(3) On or about November 27, 2023, DERENORCOURT sent a message to [redacted] confirming the date on which the person to whom they were selling a lease will have the money. DERENORCOURT sent a message to [redacted] saying, "The 15 she will have it."

(4) On or about November 27, 2023, [redacted] responded "So she's gonna gimme 500 Friday and she's gonna be ready the 15? If she moves in the 15 she only gonna have to pay half the rent for the prorated so its gonna be less than 3500."

(5) On or about December 2, 2023, [redacted] sent DERENORCOURT a message on Telegram with stolen credit card information of F.G. The message included the credit card number and the name of F.G.

(6) On or about December 2, 2023, DERENORCOURT then used the stolen credit card information to pay a Washington Gas bill for apartment 555 in the Illume complex, 853 New Jersey Ave SE, Washington, D.C. 20003 and sent [redacted] a screenshot of the receipt.

(7) On or about December 2, 2023, [redacted] then sent DERENORCOURT a message on Telegram referencing the amount of the receipt and then a second message saying, "That's what we owed?"

(8) On or about December 2, 2023, DERENORCOURT responded to [redacted] in the affirmative and wrote back, "Yea[h]."

(9) On or about January 24, 2024, [redacted] sent DERENORCOURT a message on Telegram containing C.C.'s name and the address of an apartment that had been fraudulently rented in October 2023 using C.C.'s name, date of birth and C.C.'s stolen Social Security Number ending in the digits -0002.

(10) On or about January 24, 2024, [redacted] instructed DERENORCOURT to impersonate C.C. to find out what the mailbox number for the unit was.

(11) On or about January 24, 2024, DERENORCOURT sent messages to [redacted] negotiating a price for DERENORCOURT to impersonate C.C.

(12) On or about January 24, 2024, DERENORCOURT sent a message to [redacted] with instructions on how to locate the mailbox.

(13) On or about January 31, 2024, DERENORCOURT sent [redacted] a message saying "How much will you charge for a cpn with good credit".

(14) On or about January 31, 2024, [redacted] responded "600".

(15) On or about February 15, 2024, [redacted] submitted, or caused to be submitted, a 15 month lease application for the Jefferson Marketplace apartment to the Jefferson Apartment Group, the apartment management company of the Jefferson Marketplace, using L.S.'s name, date of birth, and L.S.'s stolen Social Security Number ending in the digits -9600.

(16) On or about February 15, 2024, [redacted] submitted or caused to be submitted a fabricated letter of employment for L.S. from "Randstad."

(17) On or about February 19, 2024, [redacted] also sent or caused to be sent an email from a fabricated employee at Randstad purporting to confirm L.S.'s employment in order to fraudulently obtain the lease.

(18) On or about March 13, 2024, [redacted] sent DERENORCOURT, via Telegram, a script with instructions to facilitate the move-in to the apartment rented in L.S.'s name, using L.S.'s name, date of birth, and Social Security Number.

(19) On or about April 15, 2024, [redacted] sent DERENORCOURT text messages about a fraudulent application that he was preparing for them to live at the F1rst Residences apartment complex in Washington, D.C.

(20) On or about April 15, 2024, DERENORCOURT sent a message in response saying "Ok thanks."

(21) On or about April 15, 2024, [redacted] submitted, or caused to be submitted, a 15-month lease application for the F1rst Residences apartment to JBG Smith, the apartment management company of the F1rst Residences, containing a fabricated number ending in the digits -4431 in the space for a Social Security Number.

(22) On or about April 15, 2024, [redacted] submitted or caused to be submitted a fabricated letter of employment for himself from "Randstad," which was nearly identical to the letter he submitted or caused to be submitted on February 15, 2024.

(23) On or about April 17, 2024, DERENORCOURT took a rideshare service to the address of an apartment that had been fraudulently rented using A.R.'s stolen identity.

(24) On or about July 4, 2024, [redacted] submitted, or caused to be submitted, a 15 month lease application for the Pinnacle NoMa apartment to the Jefferson Apartment Group, the apartment management company of the Pinnacle NoMa, containing

C.M.'s name, date of birth, and C.M.'s stolen Social Security Number ending in the digits -6946.

(25) On or about July 4, 2024, [redacted] submitted or caused to be submitted a fabricated letter of employment for C.M. from "Randstad" to the Jefferson Apartment Group.

(26) On or about July 30, 2024, [redacted] opened a Cash App account using C.M.'s name, date of birth, and C.M.'s stolen Social Security Number ending in the digits -6946.

(27) On or about September 1, 2024, in order to be able to verify the account, [redacted] uploaded to Cash App a fraudulent New Jersey driver's license with C.M.'s name and date of birth but [redacted] photo in order to defraud Cash App's verification process.

(28) On or about September 1, 2024, [redacted] took a live image "selfie" of himself to fraudulently bypass Cash App's follow up verification step for the account he opened using C.M.'s identity.

(29) Between on or about July 30, 2024, and on or about April 3, 2025. [redacted] used the Cash App account to conduct hundreds of transactions in Bitcoin and United States Dollars in C.M.'s name.

(30) On or about June 8, 2025, DERENORCOURT submitted, or caused to be submitted, a 14-month lease application for the Maren apartment to Riverfront Holdings II, LLC, the owner of Maren, using a fabricated Social Security Number ending in the digits -4129.

(31) On or about August 5, 2025, [redacted] used his PayPal account to pay an application fee for Conspirator A for an apartment at the Vela, located at 1300 Yards Place SE, Washington, D.C. 20003.

(32) On or about September 12, 2025, DERENORCOURT sent a message to [redacted] saying "Did you respond to her?" in reference to a representative from the Maren reaching out about nonpayment.

(33) On or about September 12, 2025, [redacted] responded to DERENORCOURT and stated, "I'm not giving her any more money let's see what she's gonna do" and instructed DERENORCOURT not to make payment.

(34) On or about September 27, 2025, DERENORCOURT sent a message to [redacted] him to send a message to representatives at the Maren regarding their nonpayment.

(35) On or about September 27, 2025, [redacted] instructed DERENORCOURT not to make a payment.

(36) On or about November 29, 2025, Conspirator A submitted an application to the District of Columbia Department of Motor Vehicles to change his address to DERENORCOURT's address at the Maren.

(37) On or about December 15, 2025, [redacted] sent a message to DERENORCOURT that Conspirator A was going to use DERENORCOURT's address for his driver's license and that DERENORCOURT would be compensated.

**(Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Sections 371 and 1343)**

**COUNTS TWO THROUGH FIVE**
**(Wire Fraud)**

18. Paragraphs 1 through 17 are incorporated here.

19. On or about the dates set for below; in the District of Columbia and elsewhere, the

defendants as specified below, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly and intentionally transmitted and caused to be transmitted signals by means of the following wire communications in interstate commerce:

| **Count** | **Date** | **Defendant** | **Wire Transmission** |
|---|---|---|---|
| Two | February 15, 2024 | [redacted] | [redacted] sent, or caused to be sent, the rental application for the Jefferson Marketplace apartment through the service RealPage, Inc. whose servers are outside of the District of Columbia. |
| Three | April 15, 2024 | [redacted] | [redacted] sent, or caused to be sent, the rental application for the F1rst Residences apartment through the online web portal RentCafe, which is owned by Yardi Systems whose servers are outside of the District of Columbia. |
| Four | July 4, 2024 | [redacted] | [redacted] sent, or caused to be sent, the rental application for the Pinnacle NoMa apartment through the service RealPage, Inc. whose servers are outside of the District of Columbia. |

| Count | Date | Defendant | Wire Transmission |
|---|---|---|---|
| Five | June 8, 2025 | MALIKTRA DERENORCOURT | **DERENORCOURT** sent, or caused to be sent, the rental application for the Maren apartment through the online web portal RentCafe, which is owned by Yardi Systems whose servers are outside of the District of Columbia. |

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

**COUNTS SIX THROUGH SEVEN**
**(Aggravated Identity Theft)**

20. Paragraphs 1 through 17 are incorporated here.

21. On or about the dates set forth below as to each count, in the District of Columbia, the defendants as specified below, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, as specified below, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A, that is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person as described below for each count:

| Count | Date | Defendant | Use of Name |
|---|---|---|---|
| Six | February 15, 2024 | [redacted] | [redacted] sent, or caused to be sent, the rental application for the Jefferson Marketplace apartment through the service RealPage, Inc. whose servers are located outside of the District of Columbia. |
| Seven | July 4, 2024 | [redacted] | [redacted] sent, or caused to be sent, the rental application for the Pinnacle NoMa apartment through the service RealPage, Inc. whose servers are located outside of the District of Columbia. |

**(Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A(a)(1))**

**FORFEITURE ALLEGATION**

22. Upon conviction of any of the offenses alleged in Counts One through Seven, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

23. If any of the property described above as being subject to forfeiture, as a result of any act or omission of a defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be divided without difficulty;

each defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL

FOREPERSON

JEANINE FERRIS PIRRO
United States Attorney

By: ____________________________
Gauri Gopal
Chief, Federal Major Crimes